UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHELDON SHORTER,

     Petitioner,

                             Case No. 8:11-CV-1941-T-24EAJ
                                    8:08-CR-270-T-24EAJ

UNITED STATES OF AMERICA,

     Respondent.

_____/

## O R D E R

This cause comes on for consideration of Petitioner's Motion
under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by
a Person in Federal Custody (Cv-D-1) his Supplemental Memorandum in
Support of Motion for Relief (Cv-D-3), the Government's response in
opposition thereto (Cv-D-9).

Petitioner and others were charged with conspiracy to
distribute and possess with the intent to distribute marijuana in
violation of 21 U.S.C. §§ 846, 841(b)(1)(A), and one count of
possession with intent to distribute 100 kilograms or more of
marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).
Petitioner retained attorney Hugo Rodriguez to represent him.
Petitioner proceeded to trial with co-defendants Jean Baptiste and
Hardaway Volcy. A jury found Petitioner and his two co-defendants
guilty of both charges of the Indictment. On April 22, 2009, the
Court sentenced Petitioner to a term of imprisonment of 328 months.

Petitioner appealed his convictions and sentence. He argued

that his right to a jury drawn from a fair cross-section of the
community was violated because the venire did not include a
representative number of African-Americans, and that the evidence
was insufficient to support his convictions.  He further argued
that the evidence did not support this Court's determination of the
quantity of drugs at sentencing.  Finally, Petitioner challenged
the organizer leader enhancement and argued that the Court failed
to comply with 18 U.S.C. § 3553(c)(1) in sentencing him.  The
Eleventh Circuit affirmed Petitioner's conviction and sentence.
United States v. Baptiste, 388 Fed. Appx. 876 (11th Cir. 2010) (per
curiam).

Petitioner, through attorney D. Lance Langston, timely filed
his § 2255 motion.  (Cv-D-1.)  In that motion, Petitioner raises
two claims of ineffective assistance of counsel.  First, Petitioner
claims his counsel's performance was constitutionally ineffective
in failing to properly object to the composition of the jury
venire.   Second, Petitioner claims that his counsel failed to
advise him of plea negotiations and failed to advise him with
respect to his sentencing exposure and the consequences of
proceeding to trial.

On September 19, 2011, Petitioner filed a pro se supplemental
memorandum seeking to amend his § 2255 to include an additional
five grounds of ineffective assistance of counsel.   (Cv-D-3.)
Specifically, Petitioner claims his attorney rendered ineffective

2

assistance in failing to (1) raise a _Brady_ violation with regard to an untimely disclosure of a videotape displaying how to open a trailer door without breaking the seal; (2) object to the Court's examination at trial of Trooper Lanese; (3) request an immunity instruction with regard to the testimony of Government witness Ramiro Parra; (4) request a multiple conspiracy instruction; and (5) challenge the consideration of an uncounseled prior conviction to increase Petitioner's criminal history.

The Government responds that Petitioner's claim relating to the composition of the jury venire is procedurally barred because the Eleventh Circuit previously addressed the issue on appeal. With regard to Petitioner's claim of ineffective assistance of counsel for failing to advise of plea offers or negotiations, the Government argues that Petitioner fails to show a reasonable probability that but for counsel's alleged deficiencies he would have pled guilty. The Government does not respond to the claims in Petitioner's _pro se_ filing other than to state that the _pro se_ filing should be stricken.

Local Rule 2.03(d) provides that where a party is represented by counsel, the party shall not "take any step or be heard in the case in proper person, absent prior leave of Court...." Local Rule 2.03(d), M.D. Fla. Petitioner has not sought or received leave of Court to file his addendum. As such, it would be appropriate to strike Petitioner's _pro se_ filing. The Court, however, in an

abundance of caution, will address Petitioner's additional claims along with those raised by his counsel.

## INEFFECTIVE ASSISTANCE OF COUNSEL

As previously indicated, Petitioner raises various claims of ineffective assistance of counsel. Claims of ineffective assistance of counsel require a showing of the two-prong test as set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In order to succeed under the Strickland test, a movant has the burden of proving: (1) deficient performance by counsel; and (2) prejudice resulting therefrom. Id. at 687.

The first prong of the Strickland test requires the Court to determine whether trial counsel performed below an "objective standard of reasonableness," while viewing counsel's challenged conduct on the facts of the particular case at the time of counsel's conduct. 466 U.S. at 688, 690. Notably, there is a strong presumption that counsel rendered adequate assistance and made all significant decisions with reasonable and competent judgment. Id.

A counsel's performance is deficient if, given all the circumstances, his or her performance falls outside of accepted professional conduct. Strickland, 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential," and "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken "might be

4

considered sound trial strategy." Chandler v. United States, 218 F.3d 1305, 1313-14 (11th Cir.2000) (en banc) (quoting Strickland, 466 U.S. at 689 and Darden v. Wainwright, 477 U.S. 168 (1986)). Rather, for counsel's conduct to be unreasonable, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." Chandler, 218 F.3d at 1315.

The Supreme Court has consistently held that "as a matter of law, counsel's conduct ... cannot establish the prejudice required for relief under the second [prong] [o]f the Strickland inquiry." Nix v. Whiteside, 475 U.S. 157, 175 (1986). This admonition emphasizes the stringent requirement that if a petitioner does not satisfy both prongs of the Strickland test, "he will not succeed on an ineffective assistance claim." Zamora v. Dugger, 834 F.2d 956, 958 (11th Cir. 1987). See also Weeks v. Jones, 26 F.3d 1030, 1037 (11th Cir. 1994). Therefore, a court may resolve a claim of ineffective assistance of counsel based solely on lack of prejudice without considering the reasonableness of the attorney's performance. Waters v. Thomas, 46 F.3d 1506, 1510 (11th Cir. 1995) (citing Strickland, 466 U.S. at 697).

With regard to the second prong, the petitioner must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, at 694-95. A reasonable probability is a probability "sufficient to undermine confidence in the outcome."

5

_Id._ at 694.   A petitioner must show a "substantial, not just conceivable, likelihood of a different result."   _Cullen v. Pinholster_, --- U.S. ----, 131 S.Ct. 1388, 1403 (2011) (citation omitted).

With the foregoing standard in mind, the Court addresses each of Petitioner's ineffective assistance of counsel claims below.

**I.   Failure to Offer Evidence Related to Jury Venire Composition**

Petitioner's first claim is that his counsel failed to put forth any evidence to support his objection to the composition of the jury venire.

At trial, immediately after the venire was seated in the courtroom, Shorter's counsel stated at sidebar:

> Your Honor, on behalf of my client, who is African-American, and the other two co-defendants who are African-American, we're making a challenge that the venire that is not a representative example of the community, nor is it statistically proportionate to African-Americans here.
>
> We believe our client may be prejudiced by the present venire.   And for the record I'm making that objection.

This Court responded, "You have it for the record."   (Cr-D-377, p.8.)

On appeal, Petitioner argued that his Sixth Amendment right to a jury drawn from a fair cross-section of the community was violated because the venire did not include a representative number of African Americans.   The Eleventh Circuit rejected the claim. The Eleventh Circuit found that:

6

the record does not show that Shorter ever tried to offer
any such evidence. He objected to the composition of the
jury pool but without any evidence to support his
objection. It was Shorter's burden to make a prima facie
showing of underrepresentation and systematic exclusion,
and his failure to even attempt to do so is not error on
the part of the court. See Clarke, 562 F.3d at 1163;
Grisham, 63 F.3d at 1077.

Baptiste, 388 Fed. Appx. at 882.

Here, Petitioner fails to show prejudice resulting from his
attorney's performance. In order to establish a prima facie
violation of the fair cross-section requirement, a defendant must
show that: "(1) the allegedly excluded group is a 'distinctive
group in the community'; (2) the representation of this group in
the venire from which the jury was selected was not 'fair and
reasonable in relation to the number of such persons in the
community'; and (3) the underrepresentation was due to 'systematic
exclusion of the group in the jury-selection process.'" United
States v. Clarke, 562 F.3d 1158, 1163 (11th Cir.), cert. denied,
130 S.Ct. 809 (2009) (citation omitted). Petitioner fails to
establish the second and third requirements. Specifically,
Petitioner fails to present any evidence that a qualifying
disparity exists in the Tampa Division between the eligible
African-American jurors in the population and the percentage in the
pool from which the jurors are drawn. Furthermore, he fails to
present any evidence of systematic exclusion of African-American in

the jury process.[1]  As such, he is not entitled to relief as to this claim.

## II.  Failure to Advise of Plea Offer

Petitioner next contends that his trial counsel failed to inform him of a plea offer or adequately advise him of the status of plea negotiations.  He further contends that his counsel did not adequately advise him of his sentencing exposure.  Petitioner also argues that his counsel failed to advise him that co-defendant Cleo Mitchell had pled guilty and was going to cooperate.

According to the email evidence submitted by Petitioner, attorney Rodriguez emailed AUSA James Preston on January 21, 2009, six days before the commencement of the trial.  The email stated:

> Would consider having Shorter plead to the 1000 kilos of MJ, with an enhancement of role.  We would have to agree that the MJ was 1000-3000 kilos or a level 32 base offense level.  He would cooperate after sentencing, as he is concerned about public knowledge if done prior to plea or even mentioned at sentencing.

(Cv-D-1-1, p.2)  Rodriguez calculated an offense level of 32 with

---

[1]  The Middle District of Florida follows its Plan for the Qualification and Selection of Grand and Petit Jurors.  Every two years, the Tampa Division's master jury wheel is created through the use of voter registration lists from Hardee, Hernando, Hillsborough, Manatee, Pasco, Pinellas, Polk and Sarasota counties.  Eighty thousand names are randomly selected from the lists of registered voters.  Those persons randomly selected are sent a juror qualification questionnaire which is to be completed and returned.  The returned questionnaires are processed, and those persons qualified to serve form a second wheel referred to as a "qualified jury wheel."  Each month the Court's jury staff uses an automated jury system to randomly select several hundred persons from the qualified jury wheel to summons as potential jurors.  Petitioner has not presented any evidence that this system systematically excludes African-Americans from the process.

a four-level enhancement for role in the offense and a 2-level reduction for acceptance of responsibility. These calculations resulted in a total offense level of 34 and a corresponding sentencing range of 151-188 months. (Id.)

AUSA Preston responded via e-mail as follows:

> Thank you for attempting to resolve this matter short of trial, but I cannot agree to your proposal. A conservative estimate of the marijuana for which Mr. Shorter is responsible is approximately 13,000 kilograms. The base offense level for that quantity is 36. With the other adjustments you note, the range would be 292-365 months. (These guidelines would still apply even had I been able to accept the offer to plead to the 100 [sic] or more kilograms, 5-40 year penalties.) If Mr. Shorter wishes to plead to the indictment, the government would not oppose the low end of this range and Mr. Shorter would be given the opportunity to cooperate after sentencing, if he did not pursue an appeal. I do not anticipate pursuing any offer of cooperation after trial. I recognize that this more than likely keep us in a trial posture, but feel free to contact me if the situation changes.

(Id. at p. 1.)

Mr. Rodriguez forwarded Preston's email response to Petitioner with the message, "now you can better understand the [expletive] we're up against." Petitioner responded to the email with an expletive. (Id.)

It is clear from the email exchanges that attorney Rodriguez did in fact attempt to negotiate a plea agreement with the Government. The Government was not willing to agree to the quantity of marijuana proposed by Petitioner. Attorney Rodriguez clearly advised Petitioner of the terms the Government was willing

9

to offer and the corresponding sentencing range. Petitioner's response to e-mail certainly shows his dissatisfaction with the terms offered by the Government.

While Petitioner contends that his counsel failed to advise him of the fact that Cleo Mitchell pled guilty and was going to cooperate, the record demonstrates Rodriguez was aware of Mitchell's guilty plea. At the status conference on November 12, 2008, at which Rodriguez was present, it was discussed that Mitchell was set to plead guilty and that a written plea agreement had been filed. At that time, Rodriguez advised that Petitioner would be going to trial. Mitchell ultimately pled guilty on November 21, 2008. At the status hearing on December 17, 2008, the Court specifically stated, "Mr. Rodriguez, you've all along said your client is going to trial." Mr. Rodriguez responded that he had recently conferred again with his client and anticipated he would go to trial.[2]

In any event, Petitioner fails to show prejudice resulting from his counsel's alleged deficiencies. In order to establish prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would ... have pleaded guilty and would [not] have insisted on going to trial." Coulter v. Herring, 60 F.3d 1499, 1504 (11th

---

[2] While there are no written transcripts of the status hearings, the Court reviewed the audio of the hearings.

Cir.1995) (quoting <u>Hill v. Lockhart</u>, 474 U.S. 52, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985)). The Eleventh Circuit addressed whether prisoners had shown prejudice under circumstances similar to those here in <u>Scott v. United States</u>, 325 Fed. Appx. 822, 825 (11th Cir.) (per curiam), <u>cert. denied</u>, 130 S.Ct. 435 (2009), and <u>Oliver v. United States</u>, 292 Fed. Appx. 886, 887-88 (11th Cir. 2008) (per curiam), <u>cert. denied</u>, 129 S.Ct. 2023 (2009).[3]

In <u>Scott</u>, the prisoner alleged on appeal that the district court erred in denying, without holding an evidentiary hearing, his claim of ineffective assistance of counsel for failing to fully advise him of potential sentences during plea negotiations. Scott had alleged that his counsel failed to advise him that he could avoid a life sentence by entering a guilty plea without a plea agreement before the government had an opportunity to file an information under 21 U.S.C. § 851. The Eleventh Circuit, in addressing the second prong of the <u>Strickland</u> test, explained:

> Scott attempts to demonstrate prejudice by suggesting he would have given a guilty plea greater consideration if his counsel had advised him differently and by stating he could have received a

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." CTA11 Rule 36-2.

lower sentence if he had pled guilty without a plea
agreement. In Diaz, we concluded a petitioner had
failed to establish prejudice when he argued a
guilty plea would have resulted in a lower sentence
and offered after the fact testimony concerning his
desire to plead. 930 F.2d at 835. In this case,
Scott only goes so far as to say he should have been
able to take the lower sentence into account when
deciding whether to plead guilty. Considered in
conjunction with his counsel's affidavit, which
indicated Scott strongly advocated his innocence and
was not amenable to pleading otherwise, Scott's
argument does not establish a reasonable probability
he would actually have pled differently but for his
counsel's alleged advice. See id. at 834-35. Thus,
Scott's argument is insufficient to make the
required showing for Strickland's second prong.

Scott, 325 Fed. Appx. at 825.

Similarly, in Oliver, the prisoner appealed the district

court's denial of his § 2255 motion without holding an

evidentiary hearing. Oliver argued that he was entitled to an

evidentiary hearing because his trial counsel failed to inform

him of a plea offer extended by the government on the eve of

trial. Id. at 886 The Eleventh Circuit, in affirming the

judgment of the district court, found that Oliver failed to

demonstrate a reasonable probability he would have pled guilty

but for his attorney's error. The Eleventh Circuit explained

that:

Here, Oliver stated only that he would have
"seriously considered" the government's plea offer,
which as in Coulter, falls short of the required
standard. In addition, Oliver maintained his

12

innocence throughout trial and during his sentencing, which undermines his claim that he would have consented to a plea agreement.

Id. at 887 (footnote omitted).

Petitioner similarly falls short of showing prejudice in this case. Significantly, Petitioner does not affirmatively state that, but for his counsels' alleged errors, he would have pled guilty and would not have insisted on going to trial. He makes absolutely no indication he would have pled to the terms offered by the Government, or any other terms, for that matter. Additionally, in order for the Court to accept a guilty plea, Petitioner would have had to admit to a sufficient factual basis acknowledging his involvement in the conspiracy, which, even to date, he has not done.[4] As such, Petitioner is not entitled to relief as to this claim.

## III. Failure to Raise a Brady Violation or Move for Mistrial Based on Late Disclosure of Videotape of Truck

Petitioner argues his counsel was ineffective in failing to request a mistrial based on the Government's late disclosure of alleged Brady material. Specifically, Petitioner complains about a Florida Highway Patrol videotape demonstrating how to open a

---

[4]The Court notes that Petitioner maintained his innocence throughout the criminal proceedings. During the Government's closing argument to the jury, Petitioner burst out "[n]ot guilty." (Cr-D-173, p. 228.) At sentencing, Petitioner complained that the sentencing range he faced was "a lot of years" and "too much time." He further denied guilt and said all he had done was purchase three cars. (Cr-D-365, p. 31-32, 33.)

trailer door without breaking the seal which was shown to the jury during the trial.

In order to show a <u>Brady</u> violation, Petitioner must establish the following: (1) the Government possessed evidence favorable to the defense; (2) the Government suppressed the evidence; and (3) the evidence suppressed was material. <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). Suppressed evidence is material if there is a reasonable probability that the results of the proceedings would have been different had the evidence been disclosed to the defense. <u>United States v. Perez</u>, 473 F.3d 1147, 1150 (11th Cir. 2006).

On January 29, 2009, the fourth day of trial, the Government advised, outside the presence of the jury, that it had received a training video from Trooper Lanese the day before. The video showed that the trailer door bolting mechanism could be removed in less that a minute. The Government explained that the relevance of video as follows::

> Mr. Chalela's opening statement made it sound like this truck was Fort Knox, and that there is no way that these gentlemen would know that the drugs were in that car if the seal was put on it when they easily could have gotten to the offload site, removed the bolt, opened the doors, took their load off, repacked their unpalleted boxes of cookie dough, put it all back in, put the bolt back in, and went to their point of drop off....

(D-381, p. 21-22.)

Attorney Crawford objected to the late disclosure of the video. (<u>Id.</u> p. 22, 23.) The Court found that the jury was entitled to have the video presented to it. (<u>Id.</u> at p. 26.) The

14

Court allowed the attorneys to view the video outside the presence of the jury and adjourned Lanese's testimony. (Id. at p. 27.) After that afternoon, Lanese retook the stand and identified the video (GX 36) which was published for the jury. (Id. at p. 83-84.) Attorney Chalela attempted to impeach Lanese's credibility on cross-examination by pointing out that Lanese failed to include in his report information relating to whether he broke the seal or whether there were any marking to indicate that the doors or bolting mechanism had been removed. (Id. at p. 84-95.)

Petitioner fails to show that his counsel's failure to move for a mistrial was constitutionally ineffective or any resulting prejudice because there was no Brady violation. First, the evidence was not favorable to the defense; rather, the video rebutted Petitioner's co-defendants' claims that the trailer doors could not be opened without breaking the seal. Second, the Government did not suppress the evidence. It disclosed the evidence the day after receiving it from Trooper Lanese. Third, Petitioner has not demonstrated that there is a reasonable likelihood the outcome would have been different. The Court temporarily adjourned Trooper Lanese's testimony regarding the video until the afternoon to allow defense counsel to view the video. Additionally, defense counsel was able to cross-examine Trooper Lanese about the video and to show the video to the co-defendants' trucking expert, Bill Ray Price. (Id. at p. 212.)

## IV.  Failure to Object to Court Questioning Witness

Petitioner complains that his counsel was ineffective in failing to object to this Court's questioning of Trooper Lanese at trial.  Petitioner complains the questioning was improper and violated his due process rights.

A trial judge may question witnesses.  United States v. Betran, 805 F.2d 1524, 1529 (11th Cir. 1986); Fed. R. Evid. 614(b). Objection may be made to interrogation at the time or at the next available opportunity when the jury is not present.  Fed. R. Evid. 614(c).  "The trial court may interrogate a witness to clarify his testimony or to insure that a case is fairly tried.  On the other hand, a trial judge improperly interjects himself into the trial by questioning witnesses when the attorneys are competently conducting their cases."  United States v. Block, 755 F.2d 770, 775 (11th Cir. 1985).

Here, Trooper Lanese, who was involved in the April 24, 2008 traffic stop and subsequent search of the tractor trailer in which Volcy and Baptiste were traveling, testified in the Government's case-in-chief.  Trooper Lanese testified on direct examination that he could not recall whether he broke a seal on the trailer when he opened the doors, but that a truck door could indeed be opened without breaking the seal.  (Cr-D-379, p. 247.)  Trooper Lanese described the different types of seals (plastic and metal) he had examined on different tractor trailers.  He explained that a

16

plastic seal would break near the top of the seal when pulled. (Id. at 253-54.) He again said he did not recall a seal on the Volcy/Baptiste rig but thought he would have recalled if he had to use tools to get into the rig. (Id. at 254.)

On cross-examination, Trooper Lanese testified that when he has broken a seal in the past and found nothing he completes paperwork that enables the truck driver to show the warehouseman that law enforcement broke the seal. (Id. at 270.) He again testified he could not remember whether if there was a seal on the truck. (Id. at 271.)

As his testimony was not competed the first day, Trooper Lanese returned the following day at which time the Government started its re-direct. After being shown a photograph of the bumper area of the tractor trailer, Trooper Lanese testified it was a good possibility that he broke the seal. (Cr-D-381, p. 15.) He testified that the door for the rig could be opened without breaking the seal, but that he personally would have no cause to open the door without breaking the seal during his search. (Id. at p. 16.)

The Court then asked, "How is it that the door could be opened without breaking the seal?" Trooper Lanese responded:

> There's two different ways that you can take a door and open it without breaking the seal. One is it -- is to unbolt the mechanism that locks into where the seal is. It's very easy to take the back bolt off and take the entire locking mechanism apart without breaking that seal.

And the other way is to take the hinges off the door and open up the door that way. In that case you'd have to have a winch. It's very heavy, the doors. So it's more common to take it apart at the bolts and easily go into it.

And the seals can be broken and put back together as well. I've found a lot of seals that have been broken and put back together.

(Id. at p. 16-17.) The Court then asked, "And is there any way of telling whether a seal has been broken and put back together?" Trooper Lanese responded:

Yes. If you -- with this particular seal I probably just pulled it with my hand. I -- I don't recall actually breaking this particular seal on this particular truck. I just don't remember doing that. But with a plastic seal it's very easy to pull it and -- and break it apart, and then you can just push it back together.

(Id. at p. 17.) The Court then asked, "It sticks together, does it?" Trooper Lanese responded, "Yes, sir. A little bit of manipulation with a tool or a knife and -- and its' easily put back together." (Id.)

Thereafter, the Court asked counsel whether it had any further inquiry. Counsel for co-defendant Volcy then re-examined Trooper Lanese. During that examination, Trooper Lanese admitted it would be difficult to remove the heavy doors. He further admitted he did not recall any indication such as marking to show that the bolting mechanism of the doors had been removed on the tractor trailer in question. (Id. at p. 19.)

Then the Government asked Trooper Lanese if the locking mechanism could be removed without leaving any marks. Trooper

18

Lanese explained that if one was careful with the bolts it could be removed without leaving marks, but said that a wrench would probably leave "tooling on the inside." The Government then asked if there was a videotape showing the process. (Id. at p. 20.) As explained previously, that videotape was shown to the jury.

Petitioner fails to demonstrate prejudice resulting from his attorney's failure to object. It was well within the Court's discretion to question Trooper Lanese. The Court did not act as an advocate for the Government or show prejudice against the defendants in doing so. Furthermore, the Court's questions did not deny Petitioner a fair trial. While Trooper Lanese testified over a course of two days, the Court asked only three questions simply to clarify the evidence presented. Thereafter, the Court permitted recross-examination by the defense. Also, the Court instructed the jury that it "should not assume from anything I may have said that I any opinion concerning any of the issues in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision concerning the facts." (Cr-D-286, p. 4.) This instruction was sufficient to prevent prejudice. United States v. Benefield, 889 F.2d 1061, 1066 (11th Cir. 1989).

**V.  Failure to Request Jury Instruction Relating to Ramiro Parra**

Petitioner next claims that his attorney was ineffective in failing to request a special jury instruction relating to the

19

testimony of Government witness Ramiro Parra, who was promised immunity in exchange for his testimony.

Petitioner's claim is wholly without merit. First, on January 23, 2009, Petitioner's co-defendants proposed in writing Special Instruction 1.1 entitled "Accomplice -- Informer -- Immunity" of the Eleventh Circuit Pattern Jury Instructions. (Cr-D-261, p. 5.) Also, during the charge conference held on January 29, 2009, attorney Crawford, who represented a co-defendant, again specifically requested that the Court include the instruction. (Cr-D-381, p. 108.) Attorney Crawford explained:

> in this particular case Mr. Parra was in effect given immunity in that he was not charged with this Indictment and the crimes committed in this Indictment. He stands ready to be sentenced on another Indictment which is a separate conspiracy.
>
> So it is our position ss [sic] because of that unique status this instruction should be given in addition to the one that the Court is going to give concerning special testimony or special witnesses.

(Id. at 108-09.) The Court stated it would include the instruction. (Id. at 109.)

In instructing the jury on February 2, 2009, the Court stated in pertinent part:

> And the testimony of some witnesses must be considered with more caution than the testimony of other witnesses. For example, a paid informer or a witness who has been promised that he or she will not be charged or prosecuted or a witness who hopes to gain more favorable treatment in his or her own case all may have a reason to make a false statement because a witness wants to strike a good bargain with the government.

20

So while a witness of that kind may be entirely truthful when testifying, you should consider that testimony with more caution than the testimony of other witnesses.

(Cr-D-385, p. 178.)

While the instruction the Court gave the jury did not exactly track the language of the instruction Petitioner now proposes in his pro se supplemental memorandum, the Court gave the appropriate pattern jury instruction approved by the Eleventh Circuit. The instruction given was an accurate statement of the law and informed that jury that in evaluating a witness' credibility, it should consider if the witness had anything to gain from his testimony. As such, Petitioner fails to meet both prongs of the Strickland test.

## VI. Failure to Request Multiple Conspiracy Instruction

Petitioner next argues his counsel was ineffective in failing to request a multiple conspiracy instruction. Petitioner argues that the evidence at trial demonstrated multiple conspiracies.

Petitioner fails to demonstrate prejudice as a result of his attorney's failure to request a multiple conspiracies instruction. The Eleventh Circuit found that the evidence at trial was "more than sufficient" to support Petitioner's convictions on both the conspiracy and substantive possession counts. Baptiste, 388 Fed. Appx. at 882-83. As there was sufficient evidence in the record for the jury to find the Petitioner guilty of a single conspiracy beyond a reasonable doubt, he has not shown a reasonable

21

probability that the outcome would have been different had his attorney requested a multiple conspiracy instruction.

## VII. Failure to Object to Uncounseled Prior Conviction in PSI

Petitioner's final contention is that his counsel was ineffective in failing to object to the use of a prior uncounseled conviction in determining Petitioner's criminal history computation. Specifically, Petitioner contends that his 1998 conviction for criminal possession of stolen property, New York Criminal Court, Case No. 98N052285, was an uncounseled conviction that should not have been considered. Petitioner continues that had his counsel objected there is a reasonable likelihood that Petitioner would have received a lesser sentence.

First, Petitioner fails to present any evidence that the conviction was uncounseled. Second, the conviction was not used to enhance Petitioner's sentence. Third, Petitioner fails to show prejudice as a result of his counsel's failure to object to the conviction.

The conviction of which Petitioner complains was the sole conviction included in the PSI. Petitioner was scored one criminal history point for the conviction. (PSI ¶ 48.) With one criminal history point, Petitioner still had a criminal history category of I, which is the lowest criminal history category. Certainly Petitioner's criminal history category I (which includes those offenders having 0 to 1 criminal history points) could not be said

to "significantly over-represent[] the seriousness of [his] criminal history or the likelihood that [he] will commit further crimes." The conviction did not increase either Petitioner's criminal history category or the corresponding guideline sentence range. Petitioner fails to present any evidence that the conviction had any effect on his sentence whatsoever, and, further fails to show that there is a reasonable probability that his sentence would have been different had his counsel objected to the inclusion of the conviction in the PSI.

## EVIDENTIARY HEARING

Lastly, as to Petitioner's request for an evidentiary hearing, Petitioner has failed to demonstrate the need for such a hearing. The Court need not conduct an evidentiary hearing where it is evident from the record that the petitioner was not denied effective assistance of counsel. <u>Diaz v. United States</u>, 930 F.2d 832, 834 (11th Cir. 1991). Based on the foregoing analysis, the Court does not find that an evidentiary hearing is warranted.

It is therefore ORDERED that:

(1) Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CV-D-1; CR-D-426) is DENIED.

(2) The Clerk is directed to enter judgment in favor of the Government and CLOSE the civil case file.

23

## CERTIFICATE OF APPEALABILITY AND

## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHERED ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

DONE AND ORDERED at Tampa, Florida this 20th day of March, 2012.

WILLIAM J. CASTAGNA
SENIOR UNITED STATES DISTRICT